May it please the Court, good morning, Your Honours. My name is Otto Lee, representing Plaintiff and Appellant Monica Jou. I would also like to reserve five minutes of the remainder of my time for the rebuttal later. Giving an overview of the case, the U.S. Judiciary Court below has granted summary judgment to the defendants, holding that there is not a single triable issue of fact to show that the plaintiff owns the copyright to the software, based on the Word Made for Hire Doctrine. We respectfully disagree and request that this esteemed panel reverse and remand this ruling back to the District Court. We firmly believe that under the Copyright Act that our client has the facts to prove at trial that she is a rightful owner of these titles under the Word Made for Hire Doctrine, and there's a number of issues of genuine issue of material fact in the analysis of the 13 factors as laid out in CCNV. Second point, we would like to also show that our client is at least a joint author of these software titles in case the Word Made for Hire Doctrine analysis fails, due to her personal and substantial contributions in developing them. The background of the case is basically between a software licensee and the developer of an educational software that started when the license was supposed to have expired, and when the licensee failed to account for the sales and paid royalties in this timely manner. Our client, Ju, is an immigrant from Taiwan with limited English skills, but strong math and software programming skills. She has a master's degree from the Northwestern Polytechnic University in Computer Systems Engineering in the United She wrote educational software for high school students. Besides herself, she hired about 18 individuals to assist her in making the software in the areas of physics, chemistry, geometry, and algebra. These products were completed and were sold at various retail stores, and about 8,000 copies actually have been sold. As the owner of her company, she is the mastermind behind every and each one of these software. So the first issue I would like to address, Your Honors, is regarding the Word Made for Hire aspect of this case. May I just ask you one question that really isn't particularly relevant to the outcome, but is there a parallel state court proceeding now? No, Your Honor, there is no. Regarding the trade secret case, no, Your Honor. Pardon me? We have not filed a case regarding the trade secrets matter yet. What are the state claims, though? Are there state claims that are not before us in terms of the copyright infringement? Are there claims of fraud? What are the other claims that your client would reserve if she were to be unsuccessful in establishing a copyright infringement claim? The claim left based on the ruling from the trial judge is the trade secret claim of the fact that the trade secret of act to in order to access the source code has been breached by the defendant in this case when he allegedly induced one of the former employees to provide the password into getting to the source code. There's also the claim that he that he caused her to sign a document when she was unfamiliar with English in which her understanding was that she was signing something away, and in fact, she was signing something quite different. Is that part of the issue? That's correct, Your Honor. That certainly is a material fact in dispute, whether or not that document really says what he believed she believed it to be of the meaning of the mind. I think the question is, is that a state claim in itself? Is there a state claim based on that? I believe there certainly would be considered misrepresentation of fraud claim that should be included in the state claim, but I'm sure that if this were even presented to the state, the defendant on the other side would argue that this issue has been dealt with in the state. The judge only dealt with the copyright issue and said that the state possible state claims all were dismissed without being considered. Without prejudice, that is. Not so? Yes, Your Honor. The way I read the case was the federal claims were all thrown out and only the state claims remained. Uh-huh. On an issue that also does not seem to be before us, but I have a question about. I'm not sure whether it is or should be before us. Once having signed the license agreement, is the party who is the purported licensee in the position to attack the validity of the copyright? Is there some kind of estoppel or similar doctrine that would preclude that sort of argument? Your Honor, I apologize. I really don't have a definitive answer to that question, and we'll be happy to submit supplementary. Well, no, no. I guess it didn't get presented as an issue to the district court, did it? No, Your Honor, we didn't. Okay. Well, go ahead. I'm sorry. I didn't mean to interrupt. Sure. As far as the work made for a higher issue, Your Honor, um, the court, we believe, did not fulfill its duty by only reciting the 13 factors of the CCNV, but with very limited analysis. The district court stated basically that the tax and benefit provisions were the most important as discussed in Ames, but actually even during the discussion analysis has discussed even fewer prongs than Ames. I refer to page 7 and 8 of the order. Even if this court were to adopt the five factors in Second Circuit as adopted in Ames, this court would find that the district court below, however, clearly did not apply the Ames standard either. The district court only addressed four of the five requirements on Ames, and in doing so, did not fully evaluate the relationship between Ms. Chu and her workers, and therefore, the analysis is inadequate. For example, one of the most important prongs on the analysis of the 13 prongs is Ms. Chu's ability to control the matter and means of the creating of the software. It's very clear that Chu clearly retained control over the software development process. She decided what subject matter to wrote, physics, geometry, algebra, chemistry. She controlled the product by also providing the means and the management, and even the training. She bought the computers, she had the network put up together, and she decided what software tools to buy, and at times, trained various individuals on how to use these tools. As for the second prong that has been laid out regarding the skills of the employee as required to perform the job as laid out in CCMV, the general premise is that had the skill of the employer been very low while the skills of the employees were very, or the workers were very high, then it However, in this case, it's not the truth. In these facts, our client's skills are actually quite high, and as a matter of fact, the other people that she hired is anywhere from medium to high in terms of their skills. Many of them have bachelor's, master's, and some even have Ph.D. degrees. And sometimes, our client even used a tool to show and teach the rest of the how to use these tools and direct them where to work on. I direct to the record of AER 56. As for the third and the fourth prong, I think that is actually one of the strongest points, in this case, on our position where the, whether Ju has supplied the instrumentalities and where the location of the work is. Ju clearly supplied the instrumentalities, the tools, and the places of work. She offered her home at times, but she actually at point also has an office when there was enough people to actually need an office to work in there. In her deposition, she claimed that she has purchased three computers, and then also purchased a viewer software, and I at least look at more than 20 references for making chemistry in her determination of what to put in the content. Ju also stated, developing a piece of educational software such as my supercuter series requires an average of 6,000 hours of labor by software engineers and content developer, or over a hundred thousand, $1,050, and over a hundred thousand computer equipment. I refer to AER 212. So, contrary to what defendants claim, it is disputed that many employees work at their own facilities and with their own instrumentalities. We know for sure that at least four of her 80 employees actually work from home, but for those other ones, we know that a lot of them also work from the office, and also Monica's home office. One thing I would like to also mention is the business of computer programming in general. In the Silicon Valley, computer programming is frequently found that employees do work from home for various reasons, including telecommuting, and therefore we certainly do not believe that having a few employees not working at the location and from home is a determinative factor. The duration of employment is one that we believe is somewhat questionable from both sides' point of view. Certainly, many of these employees do work only a short period of time, but however, the duration of existence of a company is also very short. We're only talking about three and a half years. After all, it is a startup company, and that some turnover should easily be expected. The workers were not hired for a finite period of time. They're usually hired to terminating at will type of a situation, so a lot of them probably did not work after, they did not get paid due to the fact of the financial problems that clients have run into. As for the sixth problem, where the employer has a right to assign additional projects, I think it is clear that the workers are specified here that generally, they did multiple tasks as told by Monica to do, so this certainly favors the analysis where she is actually the person assigning additional projects to them as need be in any type of development of a product. As for the discretion of when and how long to work, the record is also mixed. It is clear that at least one employee has worked over 30 hours and that in her testimony, her hours is not flexible, which is one of the problems that Supreme Court has also looked at under SCR 79. The method of payment is also quite different between different employees. Normally speaking, if the method of plain payment is a lump sum, that would gear toward the court's analysis of being an independent contractor. However, here, some of the employees are paid hourly, and I counted at least five from the record. One, I know, was paid lump sum, and then some were never paid at all because they were volunteers. However, one more thing. Excuse me for interrupting, but I want to ask you a practical question, and I'll ask opposing counsel the same practical question. It appeared to me from looking at the docket sheet in this case that there had been a mediation with our appellate mediator that was scheduled but then canceled. In view of the fact that there are still remaining the state law claims that Judge Shader was asking about, that no matter who wins, this case will keep going on in some form, is there any expectation by either side or both sides that an additional opportunity to mediate this case would be useful? If you don't know, that's fine. It's not a question you probably were expecting. I mean, prior to the proceedings, I honestly have to say that the negotiation was going very strong right before the order came out from the judge. I think the two sides were coming together much closer in about 24 hours prior to the issuing of the order, but once the order came out, I would say that the sides have differed significantly again, since obviously our client's position has worsened, and the offer that was put on table has been completely withdrawn. Well, the positions do change as various stages of litigation go on. That doesn't mean they can't be settled at maybe on different terms, but they can be settled at various stages. There's not at every stage. I think Judge Graber was asking whether, you know, if your opponent is willing to go to mediation, whether you are. Your Honor, from the very beginning, we have agreed to go into mediation, and we're happy to do so, if that's the question, Your Honor. Okay. Now, finally, I would like to also mention, in terms of 10 and 11, whether the work is part of business, this is probably the very strongest point that we could show that Drew is clearly in the business of making educational software. This has been stated in my opponent's brief, that basically that's a point that's been conceded, and that our client has clearly invested three and a half years in time and about $400,000 to develop the SuperTutor geometry, SuperTutor chemistry, SuperTutor physics, and SuperTutor physics two, and I refer that to AER 211. We here concede that the employee benefits prong is disfavorable to us. We don't believe we have any benefits. However, even the tax treatment of the employees here has got some very clear issues of factors in dispute. At the very least, there were three of the individuals that were paid taxes based on the record. So even if the case of Ames were to be followed, I think it would be inaccurate to come out with the results such that we would say that the tax treatment clearly favors the other side either, and I would like to save my remainder time for rebuttal. May it please the Court. Ken Wilson from Perkins Coie on behalf of Appellee's Accurate Research, Eric Ho, and Kathy Wong Ho. What I guess I'd like to do is start my argument where I plan on ending up, which is on the state court causes of action, because I want to clarify what I believe is a apprehension as to the state of the case with respect to those causes of action. Originally in the state court case, there was a copyright infringement claim as well as four state law causes of action. The cause of action for breach of contract, which was where the allegation was the defendants didn't pay royalties on the software. The cause of action for fraud, where the allegation was made that the defendants defrauded the plaintiff into executing a paid-up license agreement, where she received a lump sum for licensing the works at issue in this lawsuit. And the cause of action for unfair competition, which was based on the allegation that the defendants had unlawfully distributed the software that's at issue in this lawsuit. All three of those causes of action were dismissed with prejudice as part of the summary judgment motion. And to be clear, the defendants moved for summary judgment on the grounds that A, there was no work for hire, and so the plaintiff could not prevail on the copyright infringement claim. And B, because she did not own the rights in the works that she was alleging in there was one additional state law cause of action. Even that fraud claim? Even the one that said that your client misled her into signing a document that signed something other than what was represented to her? That's correct, because the essence of that claim was that she had been defrauded into signing an agreement where she granted a perpetual license to the software at issue in this lawsuit in exchange for I believe it was $35,000. So your theory is she got $35,000 for nothing because she had nothing to sell? That's correct. And that was what the district court found. And that issue I don't believe has been challenged on appeal. There is no discussion in the appellant's papers of the state law causes of action, at least as they, to the extent they're dependent on the ownership of the software. What about the question that I asked that counsel didn't have information on? That is, having signed a license agreement, agreeing to pay royalties for use of a product, is there any doctrine of estoppel or anything else that precludes your client from attacking? I know what has been done in the patent law field, but I frankly haven't had occasion to look at the copyright area. I'm not aware of any case law that provides any type of licensee estoppel in the copyright context. Used to be literary against Adkins, as I remember, in patent, but that got overturned judicially, as I remember. But you're saying you don't know what the law is on copyright? Well, no. I phrase it differently. I'm not aware of any case, certainly not any case in the Ninth Circuit, that holds that there is a licensee estoppel in the copyright context. And let me add one other point in that regard. There are three defendants in this lawsuit, a company, Accurate Research, and two individuals. Even in a best-case scenario for the appellant, only one of those respondents was a party to the contract. So even in a worst-case scenario, the individual defendants and athletes would still have the right, even under an Asinor or Asinee licensee estoppel doctrine, they would still have the right to challenge the validity of the I'm saying that they are not in privity. That's correct. They are employees of Accurate Research, and there is no evidence in the record that would suggest that they were in privity of contract. Employee owners or just employees? Well, I believe Eric Ho is an employee owner. Kathy Ho, there was virtually no evidence ever elicited at any point during the case that she had any significant involvement in anything relating to the case. She is an employee. She's the husband or the wife of Eric Ho, but there's no suggestion that she ever had any substantive involvement. What's the fourth claim? The final claim is the trade secret claim. So the breach of contract claim, the unfair competition claim, the fraud claim, and the trade secret claim. We also move for summary judgment on the trade secret claim, arguing that if the plaintiff did not own the defendant's use of the source code, which underlied the copyrighted works, Judge Fogel concluded that it was an open question as to whether a trade secret claim could be maintained in those situations. I think you referred to it as an interesting question, but a question that he wasn't prepared to resolve. And so he chose to dismiss that claim without prejudice and let the state courts sort that out. So that takes me back to my practical question that I asked opposing counsel. What is your client's best apostrophe position on the possibility of mediation? Well, let me answer it. Let me give you two answers to that question. Number one, we've always been prepared to mediate the case if it made sense. But to be able to mediate a case, you need, and I mean no real disrespect, but you need rational parties. And when you have a it makes the mediation process not very useful. So that would be concern number one about mediation. And concern number two is the trade secret claim has a statute of limitations of three years. That statute has now expired. It has continued to run since the case was dismissed in the district court. And so I believe the case law is quite clear that that claim is now time barred. So if this case, if the district court's decision is affirmed, as I believe it should be, I do not believe there's anything left to be litigated in this case. Now, with respect to the specific work for hire issues that are presented, I'm not going to go through the factors and the evidence in the same level of detail as my counterpart did, because I think the evidence and the argument on those issues is quite well set forth in the briefs, except to say that from the very beginning, the reason that we brought the motion for summary judgment on the work for hire issue is because we believe there was no evidence in the record that would support the work for hire claim, given the applicable legal standards of the CCNV case. Specifically, we believe that there was little, if any, evidence on any of the 12 or 13 factors, depending on how you count them, that would favor a finding that the 18 people who wrote the software, who did the work on the work for hire claim, were the employees. At the district court, there was no evidence elicited at all. In fact, in opposing summary judgment, the plaintiff ignored the work for hire argument altogether. At oral argument, the plaintiff relied upon the copyright registration certificate as the evidence in support of the work for hire claim. Even on appeal, the evidence that is actually record is very limited on the work for hire issue. It is not accurate to say that the only factor that favors a finding that the actual authors of the software were independent contractors rather than employees is evidence on the employee benefits prong or on the tax treatment prong. While those prongs certainly overwhelmingly favor a finding that they are independent contractors, the other factors also favor that finding. The evidence is clear that the contractors who did the work in many instances worked away from Joe's offices, worked in their own facilities, used their own equipment. They had a high level of expertise in their field, which under the case law is a factor that also favors a finding that they are independent contractors, not employees. They worked finite periods of time on exclusive projects. All the citations of that evidence is in the record. What we have in response is largely characterizations of Joe's contributions or assertions about what the record says that simply aren't backed up by what actually appears in the record. For example, the assertion that most of the employees worked out of the home, out of her office, using her facilities. The citation to the record for that proposition merely says that she contributed facilities and equipment. It says nothing like most of the employees relied upon her equipment or facilities in order to perform the work. The district court concluded in ruling on the work for hire issue that there was no evidence before that court to support a finding of work for hire. I believe the district court was correct. I believe the record on this appeal confirms the district court was correct. And unless the court has any questions on that issue, I don't have anything further we would be willing to submit on the work for hire issue. I would certainly be willing to work to submit on the joint work issue unless the court has any questions for me on that. I don't believe that issue. My only question is I didn't see that having been raised below. I assume you don't disagree with that. No, it was never raised below. And even the attempted citations in the appellant's papers to a segment of the oral argument, the word co-author or joint author or joint work was never raised or suggested in the court below. It doesn't appear on the copyright registration certificate. It doesn't appear in the complaint where Joe contends that she is the sole author. It doesn't appear in the opposition to the summary judgment motion. It doesn't appear anywhere in any of the papers or any of the record below. And therefore, I think it would be both inappropriate for it to be considered on appeal and inappropriate to be considered substantively because there's simply nothing in the record that would support such a theory. Thank you, Your Honor. Yes, Your Honor. Regarding the issue of mediation, we certainly, again, says we believe that mediation is always a fruitful thing. And if this case were remanded back to the trial court, I certainly think that at that time the mediation would get back on track and that, I believe, would be quite certain. Regarding my opponent saying that there's lack of evidence or no evidence, I want to point to the court that this is really a case not after trial like Ames did. This is a case only at the juncture of summary judgment. And here's a case where not all the evidence has yet been presented. And clearly, there's still a lot of evidence that I would like to... For summary judgment, isn't the party responding obligated to present whatever evidence may be presented in support of the position? That's correct, Your Honor. So why are you saying that there's some evidence that has not been presented? When I mean evidence has not been presented, I mean there might be impeachable evidence that one may be able to use at trial that might not have been included into the record yet and will disclose at trial. Ultimately, the question really is do we have a issue of material fact that could... On the present record, not on what might be the record. That's correct. And even based on that, we believe that if you look at the 13 factors fairly and given what's on the record, there are certainly many issues that we're still in dispute of. On the joint authorship question, do you agree or disagree that this issue was not raised in trial court? No, we don't, Your Honor. The reason is because this was actually clearly discussed at the hearing. What's the citation, specific citation to the record? Sure, Your Honor. I could look that up. If I may do that after the argument, I really appreciate it, Your Honor. Basically, what I would like to say in closing is to talk about this is given the facts and numerous unresolved issues that need to be determined by the trial fact for the court to conclude that Zhu has no rights to software is quite shocking. The result would be devastating to Zhu because that basically says she has no ownership interests of any of intellectual property. She has dedicated her life to work on for three and a half years for 16 hours a day and seven days a week. This is a small business, and it also means that record keeping of text records is not exactly her forte, and we submit to that. A result ruling for no copyright ownership here would be a result that is clearly repugnant of public policy because it clearly unjustly enriched their licensee here and not one of the creator or one of the workers we're dealing with like we have in CCMV by allowing them to freely exploit these software products and the content which they already have. For the hard work and resources that Zhu has already personally put in, we contend that would honestly offend the notion, the traditional notion of fair place and substantial justice that a constitution copyright law is supposed to be. All these analysis of CCMV regarding employee is really a way for the court to try to figure out a way to determine what type of relationship is fair so that who is supposed to be the proper owner of a copyright that's been created. And in this case, there's no question among all the workers that this was work that they believed they worked for Zhu and it's supposed to be worked together and will be part of a big product that hopefully it would be very fruitful and very profitable during the dot com days at the time. The Ninth Circuit should not permit the defendants to reap where they did not sow. And I apologize, we keep misspelling sow in the brief. This question, we reverse the judgment of the lower court and remand this case for trial. Thank you, Your Honor. Thank you both very much. Case testarchy will be submitted.
judges: Reinhardt, Graber, Shadur